UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT (DOC. NO. 163)**<br><br>Case No. 2:21-cv-00573<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

In this action concerning water rights and water resource management, Plaintiff Ute Indian Tribe of the Uintah and Ouray Reservation (the "Tribe") moves for leave to file a third amended complaint against various federal and state entities and officials. (Mot. to Amend, Doc. No. 163.) The Tribe seeks to amend its existing claims, to reassert amended versions of previously dismissed claims, and to add additional plaintiffs—members of the Tribe—to assert a class action discrimination claim. The United States Department of the Interior, Secretary of the Interior Deb Haaland, the Bureau of Reclamation, and the Bureau of Indian Affairs (the "Federal Defendants") oppose the motion, noting the Tribe has already amended its complaint twice and arguing the proposed amended complaint is futile. (Fed. Defs.' Opp'n, Doc. No. 168.) The State of Utah, Utah Governor Spencer Cox, and Utah State Engineer Teresa Wilhelmsen (the "State Defendants") also oppose the motion on the ground of futility.[1] (State Defs.' Opp'n, Doc. No.

---

[1] The proposed third amended complaint also names the Central Utah Water Conservancy District, a political subdivision of the State of Utah, as a defendant. (*See* Proposed Third Am. Compl. ¶ 20, Doc. No. 163-2.) The Central Utah Water Conservancy District did not participate in briefing on the motion to amend.

1

169.)  The court held a hearing on May 25, 2022, (*see* Doc. No. 178), and the parties filed notices of supplemental authority and responses after the hearing, (*see* Doc. Nos. 179, 181, & 182).  Because this is the Tribe's first amendment addressing pleading deficiencies identified in a prior order, and the defendants' futility arguments are more appropriately addressed in the context of dispositive motions, the court grants the Tribe's motion for leave to amend.

## BACKGROUND

The Tribe filed this action against the Federal Defendants in the United States District Court for the District of Columbia ("D.C. district court") in March 2018.  (Compl., Doc. No. 3-1.)  The Tribe alleged the Federal Defendants breached fiduciary duties relating to management of the Tribe's water rights and infrastructure under various treaties, statutes, and agreements dating back to 1848.  (*Id.* ¶¶ 1, 7.)  The Tribe brought nine claims for declaratory and injunctive relief concerning the scope of the Tribe's water rights and the Federal Defendants' alleged fiduciary duties, and a tenth claim alleging discrimination against the Tribe and its members in violation of their constitutional due process and equal protection rights.  (*Id.* ¶¶ 164–216.)

The Federal Defendants moved to dismiss the complaint.  (Doc. No. 22.)  In response, the Tribe amended its complaint, asserting eleven claims based on the Federal Defendants' alleged fiduciary duties and a twelfth claim for violations of constitutional rights.  (First. Am. Compl., Doc. No. 25.)  The Federal Defendants withdrew their prior motion and moved to dismiss the amended complaint.  (Doc. Nos. 27 & 28.)  While this motion was pending, the State of Utah moved to intervene, (Doc. No. 32), and was granted leave to intervene as a defendant to claims one through ten and twelve, (Doc. No. 52).  The D.C. district court noted the State of Utah's intervention might result in the Tribe again amending its complaint, (*id.* at 2), and set a deadline

2

for the Tribe to do so, (Minute Order, Feb. 18, 2020). The Tribe timely filed its second amended complaint in April 2020. (Second Am. Compl., Doc. No. 57.)

In the second amended complaint, the Tribe repleaded the first eleven claims against the Federal Defendants and added the State Defendants to three of these claims addressing the scope of the Tribe's water rights (claims one, two, and four). (*Id.* ¶¶ 236–306.) The Tribe also added four new claims against the Federal Defendants (claims twelve through fifteen) for violations of the Administrative Procedures Act ("APA") and the National Environmental Policy Act related to the Green River Block Exchange contract, a 2019 water rights agreement between the Bureau of Reclamation and the State of Utah. (*Id.* ¶¶ 219–35, 307–45.) The Tribe reasserted a discrimination claim against the Federal Defendants (claim sixteen) and added the State Defendants to this claim, alleging the defendants' discriminatory actions violated constitutional due process and equal protection guarantees, 42 U.S.C. §§ 1981 and 1983, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. (*Id.* ¶¶ 346–59.)

All defendants moved for dismissal of the Tribe's non-APA claims (claims one through eleven and sixteen). (Doc. Nos. 67, 68, & 70.) The Federal Defendants also moved to transfer the four APA claims (claims twelve through fifteen) to the District of Utah. (Doc. No. 69.) In September 2021, the D.C. district court dismissed the non-APA claims and transferred the remaining four APA claims to the District of Utah. (Mem. Opinion, Doc. No. 114; Order, Doc. No. 115.) Because the D.C. district court's reasoning is relevant to the motion to amend, the ruling is discussed in detail here.

First, the D.C. district court determined claims one, two, four, and five were time-barred under the applicable six-year statute of limitations. (Mem. Opinion 8–11, Doc. No. 114.) The court found these claims were based on alleged violations of the Tribe's rights under the 1965

Deferral Agreement, as well as statutes and court cases preceding this agreement. (*Id.* at 8.) The Tribe alleged the Deferral Agreement required the Department of the Interior to complete the Central Utah Project—a major infrastructure project for delivery of water from the Colorado River system—by 2005, including two units designated to service the Tribe's water rights. (Second Am. Compl. ¶¶ 150, 159, 162, Doc. No. 57.) But the D.C. district court found, based on the allegations in the complaint, that the Tribe knew by 1992 that the defendants would not meet their obligations under the Deferral Agreement. (Mem. Opinion 9, Doc. No. 114 (citing Second Am. Compl. ¶¶ 169, 176, 182–98, Doc. No. 57).) The court also determined the continuing violations doctrine was inapplicable where these claims were not pleaded under the APA. (*Id.* at 10 & n.5.) Accordingly, the court concluded claims one, two, four, and five accrued in 1992 and were time-barred. (*Id.* at 10–11.)

The D.C. district court found claim eight was similarly time-barred. (*Id.* at 11.) This claim sought specific performance related to the 1967 Midview Exchange Agreement or, in the alternative, a declaration invalidating the agreement as an illegal conveyance of tribal trust property. (Second Am. Compl. ¶¶ 134, 289–90, Doc. No. 57.) The court concluded this claim accrued in 1967, and the continuing violations doctrine was inapplicable, because it alleged harms emerging for a single governmental action—the alleged illegal conveyance. (Mem. Opinion 11, Doc. No. 114.)

Next, the D.C. district court found the Tribe failed to identify a cognizable cause of action for claims one through eleven. (*Id.* at 13–19.) The Tribe argued these claims alleged the Federal Defendants breached various fiduciary trust duties, and that a cause of action could be inferred from the existence of such duties. (*See id.* at 13–14.) But the court found such an implied cause of action depended on the existence of specific trust duties in a statute, regulation,

4

or treaty, and it concluded the Tribe failed to identify a source giving rise to specific trust duties. (*Id.* at 14–19.) The court examined three statutes relied upon by the Tribe—the 1899 Act, the 1906 Act, and the 1992 Central Utah Project Completion Act—and found none gave rise to specific trust duties. (*Id.*) The court acknowledged that in some circumstances, the government's "elaborate control" over management of a project for the sole benefit of the Tribe could create specific trust duties, citing *United States v. Mitchell*, 463 U.S. 206 (1983). (*Id.* at 17–18.) But the court found the Tribe's allegations failed to demonstrate pervasive, comprehensive, or elaborate control over the Tribe's irrigation system sufficient to give rise to specific trust duties. (*Id.* at 18.)

In a footnote, the D.C. district court stated that even if the Tribe had pleaded an enforceable trust duty, claims one, two, four, and five would still be dismissed as waived by statute. (*Id.* at 19 n.12.) The court noted the 1992 Central Utah Project Completion Act expressly waived claims related to the Tribe's water rights under the 1965 Deferral Agreement when the Tribe received the "moneys" described in the statute, and it found the Tribe acknowledged receipt of those funds in a 2006 complaint filed in another case. (*Id.*)

The D.C. district court dismissed the Tribe's discrimination claim (claim sixteen) on several grounds. First, the court noted the Tribe lacked standing to bring an equal protection claim on behalf of its members because such *parens patriae* actions are barred against the federal government. (*Id.* at 20–21.) The court found the Tribe also failed to adequately allege animus, noting allegations of disproportionate impact were insufficient. (*Id.* at 21.) The court found the discrimination claim was inadequately pleaded against the State Defendants because (1) section 1981 does not create a private right of action against state actors; (2) the Tribe failed to allege intentional discrimination by the State of Utah or any state actor within the last four years, as

5

required for a Title VI claim; (3) the Tribe could not seek damages against the State of Utah or its officials acting in their official capacities under section 1983; (4) the Tribe failed to state a claim for damages against the officials in their individual capacities under section 1983; and (5) the Tribe failed to allege the state actors personally participated in an ongoing violation of federal law, as required for declaratory or injunctive relief under section 1983. (*Id.* at 21–22.)

Finally, the D.C. district court found it lacked personal jurisdiction over the Central Utah Water Conservancy District—a defendant to claims one, two, and four. (*Id.* at 12–13.) The court dismissed claims one through eleven and sixteen and transferred the remaining four APA claims against the Federal Defendants to the District of Utah. (Order, Doc. No. 115.)

After the transfer, the Tribe and the Federal Defendants jointly moved to set a deadline of January 19, 2022 for the Tribe to file a motion to amend its complaint. (Doc. No. 159.) The court granted the motion. (Doc. No. 160.) The Tribe timely filed its motion to amend on that date. (Doc. No. 163.)

## LEGAL STANDARDS

Rule 15 of the Federal Rules of Civil Procedure provides that unless an amendment is allowed as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "[T]he grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (alteration in original). Rule 15 instructs courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The purpose of the Rule is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter*, 451 F.3d at 1204 (internal quotation marks omitted). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper

6

subject of relief, [the plaintiff] ought to be afforded an opportunity to test [the] claim on the merits." *Id.* (internal quotation marks omitted). Factors justifying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Prejudice to the opposing party is the "most important" factor in deciding whether to allow leave to amend. *Id.* at 1207.

A party seeking to amend to join additional plaintiffs as parties must also demonstrate the requirements for joinder are met. As relevant here, Rule 20 provides:

> Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1).

## DISCUSSION

The Tribe argues leave to amend should be granted to allow it an opportunity to correct pleading deficiencies identified by the D.C. district court. (Mot. to Amend 2–3, Doc. No. 163.) The Tribe's proposed third amended complaint ("TAC") includes new factual allegations and reformulates its claims from the second amended complaint ("SAC") as follows:

- **Claim one:** The Tribe reasserts a claim for declaratory and injunctive relief regarding the scope of the Tribe's water rights and the Federal Defendants' obligations under the 1965 Deferral Agreement (previously SAC claim one), with substantial revisions. (Proposed TAC ¶¶ 202–14, Doc. No. 163-2.)

7

- **Claim two:** SAC claims two, six, and nine are combined into a single amended claim concerning the Federal Defendants' obligations relating to storage of tribal water. (*Id.* ¶¶ 215–225; *see also* Mot. to Amend 5, Doc. No. 163.)

- **Claim three:** The Tribe reasserts a claim for declaratory and injunctive relief related to interpretation and enforcement of the 1992 Central Utah Project Completion Act (previously SAC claim four), with substantial revisions. (Proposed TAC ¶¶ 226–45, Doc. No. 163-2.)

- **Claim four:** The Tribe asserts a new claim concerning rehabilitation of irrigation infrastructure known as the Uintah Indian Irrigation Project.[2] (*Id.* ¶¶ 246–52.)

- **Claims five and six:** SAC claim eight concerning the Midview Exchange Agreement is split into two alternative claims: a claim seeking a declaration that the agreement is void and imposition of a constructive trust (proposed TAC claim five), and a claim seeking specific performance under the agreement (proposed TAC claim six). (*Id.* ¶¶ 253–62; *see also* Mot. to Amend 5, Doc. No. 163.)

- **Claim seven:** The Tribe reasserts a claim concerning the Bottle Hollow Reservoir (previously SAC claim ten). (Proposed TAC ¶¶ 263–70, Doc. No. 163-2.)

- **Claim eight:** The Tribe reasserts a claim for an accounting by the Federal Defendants (previously SAC claim eleven). (*Id.* at ¶¶ 271–77.)

- The proposed TAC expressly cites the APA in claims one through eight and includes new allegations addressing exhaustion of administrative remedies and the continuing

---

[2] SAC claim five also addressed irrigation infrastructure, but proposed TAC claim four is comprised entirely of new allegations.

violations doctrine in support of these claims. (*Id.* ¶¶ 189–201, 212–13, 223–24, 244–45, 250–51, 259, 268–69, 276–77.)

- The proposed TAC includes new allegations that the Federal Defendants exercised pervasive, elaborate, and exclusive control over management of the Tribe's water rights and infrastructure. (*Id.* ¶¶ 45–54, 70–73, 103–04, 108, 220, 247.)

- **Claims nine and ten:** The Tribe's four existing APA claims concerning the Green River Block Exchange contract (SAC claims twelve through fifteen) are consolidated into two claims with substantial revisions. (*Id.* at ¶¶ 278–310.)

- **Claim eleven:** The Tribe reasserts a discrimination claim (previously SAC claim sixteen) with substantial revisions—removing the reference to 42 U.S.C. § 1981, adding members of the Tribe as class action plaintiffs, and adding new allegations regarding racial animus and personal involvement by the State Defendants. (*Id.* ¶¶ 311–37.)

- The Tribe does not seek to reassert SAC claims three and seven.[3] (*See* Mot. to Amend 5, Doc. No. 163.)

The Federal Defendants and State Defendants contend the motion to amend should be denied as futile, arguing the proposed TAC fails to cure the deficiencies identified in the D.C. district court's order. (Fed. Defs.' Opp'n 1, 4–10, Doc. No. 168; State Defs.' Opp'n 6–10, Doc. No. 169.) The Federal Defendants also argue the motion should be denied in the interest of finality because this is the Tribe's fourth attempt to plead justiciable claims and the Tribe has

---

[3] SAC claim three sought a declaration regarding and enforcement of the trust status of the Uintah Indian Irrigation Project. (Second Am. Compl. ¶¶ 250–54, Doc. No. 57.) SAC claim seven sought a declaration regarding and enforcement of the Tribe's right to quality water. (*Id.* ¶¶ 277–83.)

9

repeatedly failed to cure the deficiencies in prior pleadings. (Fed. Defs.' Opp'n 1, Doc. No. 168.) Finally, the Federal Defendants argue the proposed new plaintiffs are misjoined because their proposed class action claim is unrelated to the Tribe's existing APA claims. (*Id.* at 9–10.)

### A. Successive Amendments

Leave to amend may be denied for "repeated failure to cure deficiencies by amendments previously allowed." *Minter*, 451 F.3d at 1204. But the procedural history in this case does not support denial of leave to amend on this basis. Although this is the Tribe's third amendment of its pleadings, it is the Tribe's first attempt to address pleading deficiencies identified by a court. The Tribe's prior amendments were not in response to any order finding its complaint deficient. Rather, the Tribe's first amendment was, essentially, an amendment of right in response to a motion to dismiss. And the Tribe's second amendment was prompted by the State of Utah's intervention as a defendant in the case. Thus, the Tribe's prior amendments do not reflect repeated, failed attempts to cure pleading deficiencies. The D.C. district court's order partially dismissing the second amended complaint was the first time a court ruled on the sufficiency of the Tribe's pleadings. And this is the Tribe's first opportunity to cure the deficiencies identified in the D.C. district court's order. This factor does not support denial of leave to amend.

### B. Futility

The only other applicable factor addressed by the defendants is futility. The defendants contend the Tribe's proposed amended claims are "largely the same (if not identical)" to those asserted in the second amended complaint. (Fed. Defs.' Opp'n 3, Doc. No. 168.) And they argue the proposed TAC is subject to dismissal for the same reasons identified by the D.C. district court. (Fed. Defs.' Opp'n 1, 4–10, Doc. No. 168; State Defs.' Opp'n 6–10, Doc. No. 169.)

Although futility alone is a sufficient basis to deny leave to amend, *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007), it is within the court's discretion to decline to engage in a futility analysis in the context of a motion to amend if the futility arguments would be more properly addressed in dispositive motions. *See Lambe v. Sundance Mt. Resort*, No. 2:17-cv-00011, 2018 U.S. Dist. LEXIS 162268, at *7–8 (D. Utah Sept. 21, 2018) (unpublished) (declining to engage in a futility analysis where "the viability of [the new] claim is more appropriately addressed in the context of a dispositive motion as opposed to a motion for amendment"); *Stender v. Cardwell*, No. 07-cv-02503, 2011 U.S. Dist. LEXIS 38502, at *10–11 (D. Colo. Apr. 1, 2011) (unpublished) (declining to consider futility argument based on failure to state a claim, where the opposing party failed to assert undue prejudice and could raise the same arguments in the context of a motion to dismiss). Particularly where futility arguments are duplicative of arguments which could be raised in a motion to dismiss, courts have found that addressing those arguments in the context of a motion to amend "place[s] the cart before the horse," and "[r]ather than force a Rule 12(b)(6) motion into a Rule 15(a) opposition brief, the defendants may be better served by waiting to assert Rule 12 motions until the operative complaint is in place." *Obeslo v. Great-West Capital Mgmt.*, Nos. 16-cv-00230 & 16-cv-01215, 2017 U.S. Dist. LEXIS 223891, at *10 (D. Colo. Feb. 21, 2017) (unpublished), *R&R adopted*, 2017 U.S. Dist. LEXIS 223892 (D. Colo. Mar. 14, 2017).

The defendants' futility arguments all could be raised in motions to dismiss. And for the reasons explained below, these arguments are more appropriately addressed in the context of dispositive motions.

First, the Tribe's proposed amendment does not merely reassert the same claims dismissed from the second amended complaint. As described above, although some previously

dismissed claims are reasserted in similar form (*e.g.*, TAC claims seven and eight), others are substantially revised and reformulated (*e.g.*, TAC claims one, two, three, five, six, and eleven). And claim four appears to be comprised entirely of new allegations. Thus, it is not readily apparent whether the prior grounds for dismissal apply equally to the reformulated claims in the proposed amended complaint. Determining whether the amended claims are subject to dismissal would require a new, claim-by-claim analysis under the same standards as a motion to dismiss. This analysis is more appropriately conducted in the context of dispositive motions with full briefing, rather than based on truncated arguments made in opposition and reply briefs in the context of a motion to amend.

Further, the Tribe's proposed pleading adds numerous new allegations which attempt to address specific deficiencies identified by the D.C. district court. For example, the D.C. district court found the continuing violation doctrine inapplicable because certain claims were not pleaded under the APA, and the Tribe now expressly references the APA in claims one through eight and includes additional allegations regarding continuing violations. (*See* Proposed TAC ¶¶ 189–201, 212–13, 223–24, 244–45, 250–51, 259, 268–69, 276–77, Doc. No. 163-2.) The Tribe has also added new allegations regarding exhaustion of administrative remedies— supporting an argument that administrative exhaustion delayed claim accrual—in response to the D.C. district court's finding that certain claims accrued decades ago. (*See id.*; Reply to Fed. Defs.' Opp'n 1–2, Doc. No. 175.) Where the D.C. district court found the Tribe's allegations failed to demonstrate a system of elaborate government control sufficient to give rise to specific trust duties, the Tribe has added new allegations concerning the Federal Defendants' pervasive, elaborate, and exclusive control over water management throughout the proposed pleading. (*See* Proposed TAC ¶¶ 45–54, 70–73, 103–104, 108, 220, 247, Doc. No. 163-2.) Where the D.C.

district court found the Tribe lacked standing to bring a discrimination claim on behalf of its members, the amended pleading adds the Tribe's members as class action plaintiffs. (*See id.* ¶¶ 311–37.) Finally, where the D.C. district court found the allegations of animus and personal involvement by state officials insufficient, the Tribe has added new allegations regarding these elements. (*Id.* ¶¶ 316–22, 330.) In sum, the Tribe proposes substantial revisions and adds numerous allegations which directly address the prior grounds for dismissal. But whether these amendments are sufficient to cure the deficiencies previously identified and to overcome a motion to dismiss is more appropriately determined in the context of a fully briefed dispositive motion.

Where the Tribe has substantially amended and reformulated its claims, and the defendants' futility arguments are better suited to dispositive motions, the court declines to engage in a futility analysis here.

### C. Other Factors

None of the other factors justifying denial of a motion to amend are present here. There is no evidence of undue delay, bad faith, or dilatory motive on the part of the Tribe in bringing this motion. Although the case has been pending since 2018, this is largely a result of factors outside the Tribe's control, including the filing of dispositive motions, intervention by the State of Utah, and transfer of the case between districts. The Tribe timely moved to amend within the deadlines stipulated by the parties and set by the court.

Further, the defendants have not demonstrated they will be unduly prejudiced if the motion to amend is granted. Notably, the defendants do not address prejudice in their briefing, even though it is the "most important" factor in deciding whether to allow leave to amend. *See Minter*, 451 F.3d at 1207. Despite the age of the case, it is still in the early stages of litigation—

13

discovery has not yet begun and no trial has been set. Based on the procedural posture of the case, an amendment at this stage is not unduly prejudicial.

Because this is the Tribe's first opportunity to address pleading deficiencies identified in the prior order, the defendants' futility arguments are more appropriately addressed in the context of dispositive motions, and none of the other factors justifying denial of amendment are present, the interests of justice support granting the Tribe leave to amend.

### D. Joinder

Finally, the Federal Defendants argue the proposed class action plaintiffs are misjoined because their proposed class action claim is unrelated to the Tribe's existing APA claims. But this argument assumes the Tribe will be denied leave to amend its other claims. The Tribe seeks to amend its pleading to bring a discrimination claim by both the Tribe (as a corporate entity) and its members (the proposed class action plaintiffs), based on the same set of factual allegations. (*See* Proposed TAC ¶¶ 7, 311–37, Doc. No. 163-2; *see also* Reply to Fed. Defs.' Opp'n 9–10, Doc. No. 175.) Thus, the Tribe's amended discrimination claim and the proposed new plaintiffs' claim arise out of the same series of transactions or occurrences and involve common questions of law and fact. At this stage, where the Tribe is permitted to assert an amended discrimination claim, the requirements for joinder are met. But this ruling does not prevent the Federal Defendants from raising this issue again if the Tribe's discrimination claim is later dismissed.

## CONCLUSION

Because this is the Tribe's first amendment addressing pleading deficiencies identified in a prior order, and the defendants' futility arguments are more appropriately addressed in the context of dispositive motions, the Tribe's motion to amend is granted. The Tribe shall file its

third amended complaint in the form found at docket number 163-2 within seven days.  Once filed on the docket, the third amended complaint will be the operative complaint in this action.

DATED this 22nd day of August, 2022.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge