STEPHEN K. KAISER (18146)
KYLE KAISER (13924)
ANTHONY L. RAMPTON (2681)
KATHY A. F. DAVIS (4022)
ASSISTANT ATTORNEYS GENERAL
SEAN D. REYES (7969)
UTAH ATTORNEY GENERAL
3760 S. Highland Drive
Salt Lake City, UT 84106
skkaiser@agutah.gov
kkaiser@agutah.gov
arampton@agutah.gov
kathydavis@agutah.gov

KELSIE LAST (16825)
5352 N. Del Mar Ave.
Fresno, CA 93704
klast@agutah.gov

*Attorneys for Intervenor-Defendant State of Utah*

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY INDIAN RESERVATION, et al., | Case No. 2:21-cv-00573-JNP |
| Plaintiffs, | |
| v. | **INTERVENOR-DEFENDANT STATE OF UTAH'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT** |
| UNITED STATES DEPARTMENT OF THE INTERIOR, et al., | |
| Defendants, and | |
| | Judge Jill N. Parrish |
| STATE OF UTAH | |
| Intervenor-Defendant. | |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 2

PROCEDURAL BACKGROUND .................................................................................... 4

STANDARD OF REVIEW .............................................................................................. 6

ARGUMENT .................................................................................................................... 7

    I.     DEFENDANT'S FIRST AND THIRD CLAIMS FOR RELIEF SHOULD BE
           DISMISSED. ........................................................................................... 7

          A.     Claims One and Three should be dismissed as time-barred. ..................... 7

          B.     Even if Claims One and Three are not time-barred, they should be
                  dismissed for failure to state a claim and lack of jurisdiction.................. 11

    II.    THE STATE IS A NECESSARY PARTY TO CLAIMS NINE AND TEN
           INVOLVING THE GREEN RIVER BLOCK EXCHANGE CONTRACT, AND
           THOSE CLAIMS SHOULD BE DISMISSED. ...................................................... 20

          A.     The State is a necessary party to Claims Nine and Ten............................ 20

    III.   THE ELEVENTH CLAIM FOR RELIEF SHOULD BE DISMISSED FOR
           FAILURE TO STATE A CLAIM AGAINST THE STATE DEFENDANTS. ... 24

          A.     Plaintiffs have failed to state a claim under § 1983. ................................ 25

                 1.     Plaintiff cannot bring a § 1983 claim against the State. ............... 25

                 2.     Plaintiffs' § 1983 claims against the Individual Defendants are
                      insufficient. .................................................................................. 27

                 3.     Plaintiffs have not pleaded a claim for declaratory or injunctive
                      relief under § 1983. ...................................................................... 31

                 4.     Plaintiffs' Title VI Claims fail to state a claim. ............................ 32

CONCLUSION................................................................................................................ 35

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.D.E. Food Servs. Corp. v. City of Phila.*,
    1996 WL 590906 (E.D. Penn. Oct. 11, 1996) ....................................................... 33

*Alexander v. Choate*,
    469 U.S. 287 (1985) ............................................................................................... 34

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) .................................................................................. 32, 34, 35

*Alvarado v. KOB-TV, L.L.C.*,
    493 F.3d 1210 (10th Cir. 2007) ............................................................................. 7

*Anglers Conservation Network v. Pritzker*,
    809 F.3d 664 (D.C. Cir. 2016) ............................................................................... 9

*Arizona v. California*,
    547 U.S. 150 (2006) ............................................................................................... 17

*Arnold v. Duchesne Cnty.*,
    26 F.3d 982 (10th Cir. 1994) ................................................................................. 34

*Ashcroft v. Iqbal*,
    566 U.S. 662 (2009) ................................................ 6, 7, 27, 29, 30, 31, 32, 35

*Assoc. of Mexican–American Educators v. State of Cal.*,
    195 F.3d 465 (9th Cir. 1999) ................................................................................. 33

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 6

*Bergman v. Mich. State Transp. Comm'n*,
    665 F.3d 681 (6th Cir. 2011) ................................................................................. 19

*Biodiversity Conservation Alliance v. Jiron*,
    762 F.3d 1036 (10th Cir. 2014) ............................................................................. 19

*Brennan v. Nassau Cnty.*,
    352 F.3d 60 (2d Cir. 2003) .................................................................................... 19

*Center for Biological Diversity v. U.S. Department of Interior*,
    Case No. 21-4098 (10th Cir.) ................................................................................ 4

*City of Sherrill, N.Y. v. Oneida Indian Nation of N.Y.*,
    544 U.S. 197 (2005) ............................................................................................... 19

*Colo. River Water Conservation Dist. v. U.S.*,
    424 U.S. 800 (1976) ........................................................................................ 16, 17

*Comfort ex rel. Neumyer v. Lynn Sch.*,
    131 F. Supp. 2d 253 (D. Mass. 2001) ................................................................... 33

*Consol. Edison Co. of New York v. Ashcroft*,
    286 F.3d 600 (D.C. Cir. 2002) ................................................................... 10

*Delbert v. Duncan*,
    923 F. Supp. 2d 256 (D.D.C. 2013) ........................................................... 34

*Delcostello v. Int'l Bhd. Of Teamsters*,
    462 U.S. 151 (1983) ................................................................................... 19

*Dugan v. Rank*,
    372 U.S. 609 (1963) ................................................................................... 18

*E.E.O.C. v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ................................................................................... 13

*Ebling v. U.S. Dep't of Justice*,
    796 F. Supp. 2d 52 (D.D.C. 2011) ............................................................. 13

*Enterprise Management Consultants v. U.S. ex rel. Hodel*,
    883 F.2d 890 (10th Cir. 1989) ................................................................... 22

*Ex parte Young*,
    209 U.S. 123 (1908) ................................................................................... 31

*Fluent v. Salamanca Indian Lease Auth.*,
    928 F.2d 542 (2d Cir. 1991) ...................................................................... 22

*Gardner v. Stager*,
    103 F.3d 886 (9th Cir. 1996) ..................................................................... 18

*Grand Cnty. Emery Cnty.*,
    52 P.3d 1148 (Utah 2002) .......................................................................... 15

*Green v. Mansour*,
    474 U.S. 64 (1985) ..................................................................................... 31

*Hartman v. Kickapoo Tribe Gaming Comm'n*,
    319 F.3d 1230 (10th Cir. 2003) ................................................................. 25

*Hodges v. Pub. Bldg. Comm'n of Chicago.*,
    873 F. Supp. 128 (N.D. Ill. 1995) ............................................................. 33

*In re Apple iPhone 3G Products Liability Litigation*,
    2011 WL 6019217 (N.D. Cal. Dec. 1, 2011) ............................................ 23

*Jacobsen v. Deseret Book Co.*,
    287 F.3d 936 (10th Cir. 2002) ..................................................................... 7

*Jenkins v. Jordan Valley Water Conservancy Dist.*,
    321 P.3d 1049 (Utah 2013) ........................................................................ 13

*Jensen v. Jones*,
    270 P.3d 425 (Utah 2011) .......................................................................... 16

*Jicarilla Apache Tribe v. Hodel,*
    821 F.2d 537 (10th Cir. 1987) ............................................................. 22

*Kansas v. Colorado,*
    514 U.S. 637 (1995) ........................................................................... 19

*Lapides v. Bd. of Regents of Univ. of Ga.,*
    535 U.S. 613 (2002) ........................................................................... 26

*Little Cottonwood Water Co. v. Kimball,*
    289 P.2d 116 (Utah 1930) ................................................................... 18

*Lomayaktewa v. Hathaway,*
    520 F.2d 1324 (9th Cir. 1975) ............................................................. 22

*Metro. Water Dist. of Salt Lake and Sandy v. Questar Gas Co.,*
    361 P.3d 709 (Utah 2015) ................................................................... 14

*Mountain States Legal Fund v. Utah Public Service Comm'n,*
    636 P.2d 1047 (Utah 1981) ................................................................. 15

*Nat'l R.R. Passenger Corp. v. Morgan,*
    536 U.S. 101 (2002) ........................................................................... 19

*Nat'l Wildlife Fed'n v. Andrus,*
    642 F.2d 589 (D.C. Cir. 1980) ............................................................. 16

*Nevada v. U.S.,*
    463 U.S. 110 (1983) ........................................................................... 17

*Niagara Mohawk Power v. Tonawanda Band,*
    862 F. Supp. 995 (W.D.N.Y. 1994) ..................................................... 22

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004) ......................................................................... 9, 10

*P.R. Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.,*
    506 U.S. 139 (1993) ........................................................................... 31

*Paiute-Shoshone Indians of Bishop Community of Bishop Colony, Cal. v. City of Los Angeles,*
    637 F.3d 993 (9th Cir. 2011) ............................................................... 23

*Rannells v. Hargrove,*
    731 F. Supp. 1214 (E.D. Penn. 1990) ................................................. 33

*Richards v. Duke Univ.,*
    480 F. Supp. 2d 222 (D.D.C. 2007) ..................................................... 34

*Robbins v. Oklahoma,*
    519 F.3d 1242 (10th Cir. 2008) ..................................................... 27, 30

*Salt Lake City v. State Tax Comm'n,*
    813 P.2d 1174 (Utah 1991) ................................................................. 15

*Schroeder v. City of Chicago,*
   927 F.2d 957 (7th Cir. 1991) ................................................................ 33

*SDC Financial, LLC v. Bremer,*
   2019 WL 4393543 (M.D. Tenn. Sept. 13, 2019).................................... 22

*Sheets v. Salt Lake Cnty.,*
   45 F.3d 1383 (10th Cir. 1995) .............................................................. 34

*Shoshone-Bannock Tribes v. Reno,*
   56 F.3d 1476 (D.C. Cir. 1995) .............................................................. 16

*Shotz v. City of Plantation, Fla.,*
   344 F.3d 1161 (11th Cir. 2003) ............................................................ 33

*Southway v. Cent. Bank of Nigeria,*
   328 F.3d 1267 (10th Cir. 2003) .............................................................. 6

*Standard Fed. Save. & Loan Ass'n v. Kirkbride,*
   821 P.2d 1136 (Utah 1991)................................................................... 14

*State ex rel. State Engineer v. U.S.,*
   425 P.3d 723 (N.M. App. 2018) ........................................................... 17

*State v. Hutchinson,*
   624 P.2d 1116 (Utah 1980)................................................................... 13

*Three Starts Production Co., LLC v. BP America Production Co.,*
   2012 WL 32916 (D. Colo. Jan. 6, 2012)............................................... 23

*U.S. ex rel. Hall v. Tribal Development Corp.,*
   100 F.3d 476 (7th Cir. 1996) ................................................................ 21

*U.S. Synthetic Corp. v. Preethical, Ltd.,*
   407 F. Supp. 2d 1274 (D. Utah 2005).................................................... 6

*U.S. v. Dist. Court for Eagle Cnty.,*
   401 U.S. 520 (1971)............................................................................. 18

*U.S. v. Jicarilla Apache Nation,*
   564 U.S. 162 (2011).............................................................................. 8

*U.S. v. Orr Water Ditch Co.,*
   309 F. Supp. 2d 1245 (D. Nev. 2004)................................................... 17

*U.S. v. White Mountain Apache Tribe,*
   537 U.S. 465 (2003).............................................................................. 8

*United States v. Adair,*
   723 F.2d 1394 (9th Cir. 1983) .............................................................. 18

*United States v. Spectrum Emergency Care, Inc.,*
   190 F. 3d 1156 (10th Cir. 1999) ............................................................ 6

*Ute Distribution Corp. v. Secretary of Interior of U.S.*,
    584 F.3d 1275 (10th Cir. 2009) ........................................................................... 11

*Ute Tribe v. Dep't of Interior*,
    560 F. Supp. 3d 247 (D.D.C. 2021) ..................................................................... 31

*Webb v. Swensen*,
    663 F. App'x 609 (10th Cir. 2016) ...................................................................... 33

*Wild Fish Conservancy v. Salazar*,
    688 F. Supp. 2d 1225 (E.D. Wash. 2010) ............................................................ 11

*Wild Horse Observers Association v. Salazar*,
    2012 WL 13076299 (D. N.M., Sept. 28, 2012) ..................................................... 11

*Wilderness Soc. v. Norton*,
    434 F.3d 584 (D.C. Cir. 2006) ............................................................................... 9

*Will v. Mich. Dep't of State Polic*e,
    491 U.S. 58 (1989) ................................................................................... 25, 26, 27

*Witesell v. Utah*,
    82 F. App'x 7 (10th Cir. 2003) ............................................................................. 25

**Statutes**

28 U.S.C. § 2401(a) ...................................................................................................... 8

42 U.S.C. § 1983 ........................................................................................... 24, 25, 26

42 U.S.C. § 2000d .................................................................................................. 24, 32

43 U.S.C. § 666(a) ................................................................................................. 16, 18

5 U.S.C. § 706(1) ........................................................................................................... 9

73 Am.Jur.2d Statutes § 3 (1974) ............................................................................... 15

Utah Code Ann. § 17B-1-101 *et seq.* ................................................................ 13, 14

Utah Code Ann. § 17B-2a-1001 *et seq.* ...................................................................... 14

Utah Code Ann. § 73-21-103 ..................................................................................... 20

Utah Code Ann. § 73-4 *et seq.* ............................................................................ 17, 18

**Other Authorities**

*American Indian Law in a Nutshell*, William C. Canby, Jr. (7th ed., 2020) ................................... 8

*In the Matter of the General Determination of all the Rights to the Use of Water, Both Surface
    and Underground, Within the Drainage Area of the Uinta Basin in Utah, Dist. Ct. for
    Duchesne County, State of Utah*, Civil No. 56080056 CV ...................................... 18

Laws of Utah, 1973 (1st Special Session) (H.C.R. No. 2) .......................................... 14

**Rules**

Fed. R. Civ. Proc. 19 .................................................................................................. 22

**INTERVENOR-DEFENDANT STATE OF UTAH'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

The State of Utah, Utah Governor Spencer Cox (successor to Governor Gary Herbert), and Utah State Engineer and Director Teresa Wilhelmsen (collectively the "State") respectfully submit the following Motion to Dismiss Plaintiffs' Third Amended Complaint.[1] (ECF 186, "Complaint"). Under Federal Rules of Civil Procedures 12(b)(1) and 12(b)(6), the State moves to dismiss the first, third, ninth, tenth, and eleventh claims for relief in the Complaint of Plaintiffs Ute Indian Tribe of the Uintah and Ouray Indian Reservation, Shaun Chapoose, Edred Secakuku, Luke J. Duncan, Ronald Wopsock, Julius T. Murray III, and Christopher L. Tabbe, individually on their own behalf and on behalf of all persons similarly situated (collectively Tribe or Plaintiffs).

The State further joins in the arguments submitted by the Federal Defendants and Defendant CUWCD as they relate to Claims One, Three, and Eleven of the Complaint.

## <u>INTRODUCTION</u>

This is a case addressing longstanding disputes between the Tribe and Federal Defendants related to water rights and water management. Plaintiffs' reservation is located within the State of Utah, known to be one of the driest states in the Union and where competition for water resources within the state is fierce. The continued and increasing scarcity of water within the state has required a holistic administration to ensure sustainable use of this limited water resource. In the Complaint, the Plaintiffs allege eleven claims against the Federal

---

[1] Federal Defendants and Defendant Central Utah Water Conservancy District (CUWCD) file separately from the above-referenced State Defendants.

Defendants, State Defendants, and/or the Central Utah Water Conservancy District (CUWCD). In this most recent Complaint, the Tribe makes five claims that necessarily implicate the State.

Claim One relates to the Tribe's water rights as defined in the 1965 Deferral Agreement. The Tribe listed all defendants as parties within the heading for Claim One.  Claim Three relates to the Central Utah Project Completion Act (CUPCA) and the Tribe's waiver of litigation under CUPCA.  The Tribe does not indicate in their heading against whom Claim Three is targeted, however, based on the substance of the Claim and Plaintiff's prior complaints, it appears that the Tribe intended to name all defendants as parties of Claim Three.[2]

Claims Nine and Ten relate to the Green River Block Exchange Agreement (GRBE) between the State and the federal government.  While the headings for Claims Nine and Ten purport to be "Against the Federal Defendants," the substantive language of the Claims necessarily implicates the State which is a party to the GRBE.  The Tribe in the Complaint recognizes that the State is a party to the GRBE it contests and challenges the State's water rights under the GRBE.  (ECF 186, ¶¶ 278-310).

Lastly, Claim Eleven is alleged against all defendants and relates to various alleged civil rights grievances.  The State contends that all five of these claims should be dismissed and will address each claim in turn.

## FACTUAL BACKGROUND

In the early 1900s, the United States Congress appropriated funds to build the Ute Indian Irrigation Project (UIIP).  During the 1920s, the U.S. sought protection of Ute water rights in

---

[2] This claim is substantially the same as claim four of Plaintiff's Second Amended Complaint. Claim four of the Second Amended Complaint included a heading indicating that it was against "against all defendants." (ECF 57, ¶¶ 255-263).

Utah Federal Court, and the Court recognized a decreed water right for the Tribe of 144,000-acre feet of water depletion from the Colorado River system. (ECF 186, ¶¶ 39-40).

The CUWCD, the United States, and the Tribe executed the so-called "Deferral Agreement" in 1965. This Deferral Agreement was in anticipation of construction of the Central Utah Project (CUP). Under the Deferral Agreement, the Tribe deferred irrigation on 15,242 acres of tribal land so the CUP could collect water and transport it to the Wasatch Front. In exchange for this deferral of use, the Tribe and the United States agreed to certain items of compensation, which included building certain water facilities to benefit the Tribe, known as the "Ultimate Phase" of the CUP. It was also agreed that the Decker Report[3] accurately described the Tribe's water rights. The Tribe and the State negotiated a water compact in 1980 and slightly revised it in 1990. The 1990 compact recognized an additional 115,000-acre feet of water depletion for the Tribe. (ECF 186, ¶¶ 127-155).

In the end, the United States Congress did not authorize the building of the "Ultimate Phase" facilities. Instead, Congress approved a Ute/Utah water settlement in 1992 as part of the Central Utah Project Completion Act (CUPCA). Congress appropriated money to the Tribe to put the Tribe in the same economic position it would have been in if the "Ultimate Phase" construction had been completed. This included requiring the CUP to pay the Tribe for the Deferral Agreement water. The Tribe testified in favor of CUPCA, and as part of the CUPCA water rights settlement, Congress ratified the 1990 Compact. Utah ratified the Compact in 2018.

---

[3] The Tribe commissioned a report to identify its water rights, and in doing so hired a former federal employee to quantify the Tribe's practically irrigable acreage and the water volume necessary to irrigate said acreage.

The Tribe received a substantial financial settlement of over $250,000,000.00 under CUPCA.
(ECF 186, ¶¶ 152-167).

In 2006, the Tribe sued the United States seeking money damages for mismanagement of
trust funds and other assets.  In settlement of this litigation, in 2012 the Tribe received payment
of $125,000,000.00 and a complete waiver of the Tribe's trust-related claims.  *See* 2012
Settlement Agreement (ECF 68-4, Ex. D).

On March 19, 2019, the State of Utah (through the Utah Department of Water Resources)
and the United States Bureau of Reclamation (USBR) executed the GRBE.  The purpose of the
GRBE was to allow the State of Utah to utilize its water rights under the 1922 Colorado River
Compact without disrupting USBR's obligations and operations.  The State's water rights that
are the subject of the GBRE are a portion of a water right that was assigned to the State by the
USBR.  There is no new appropriation associated with the GRBE.  Rather, the GRBE was just a
restructuring of where and when the State's water was to be removed from and returned to the
Green River.  After the USBR and the State of Utah executed the GRBE, the USBR issued a
Final Environmental Assessment (EA) and made a Finding of No Significant Impact (FONSI).
(ECF 186, ¶¶ 172-183).  The validity of the GRBE and the State's water rights under the GRBE
are currently pending on appeal before the Tenth Circuit in another case.  *Center for Biological
Diversity v. U.S. Department of Interior*, Case No. 21-4098 (10th Cir.).

## **PROCEDURAL BACKGROUND**

The Tribe initially filed suit against the Federal Defendants on March 8, 2018, in the
District Court for the District of Columbia.  Civil No. 1:18-cv-00547-RMC (ECF 3, Attachment
1) (initial complaint supplanted by *Errata* Complaint).  On October 16, 2016, the Federal

4

Defendants filed a Motion to Dismiss, Motion for Partial Summary Judgment, and Motion to Transfer the Case. ("First Motion to Dismiss" (ECF 22)). Plaintiffs then filed an Amended Complaint on January 22, 2019. (ECF 25). The first Motion to Dismiss was formally withdrawn by the Federal Defendants via Notice dated February 4, 2019, and a Court Order declared the first Motion to Dismiss to be moot. (ECF 26 and 27). On March 22, 2019, Federal Defendants filed a second Motion to Dismiss Plaintiff's Amended Complaint. ("Second Motion to Dismiss" (ECF 28)). While the Second Motion to Dismiss was pending, and following extensive briefing, the State was granted intervention on February 5, 2020. (ECF 52).

On April 3, 2020, Plaintiffs filed their Second Amended Complaint. (ECF 57). In the Second Amended Complaint, Plaintiffs included new claims (Claims Twelve through Fifteen) related to the GRBE. *Ibid.* On July 16, 2020, the State filed a Motion to Dismiss Plaintiff's Second Amended Complaint. (ECF 67). On the same date, the Federal Defendants filed a Motion to Dismiss the Second Amended Complaint and a Motion to Transfer the case to the District of Utah. (ECF 68 and 69). Following extensive briefing and oral argument, the D.C. District Court dismissed Claims One through Eleven and Claim Sixteen of the Second Amended Complaint. The Court also ordered that remaining Claims Twelve through Fifteen be transferred to the District of Utah. (ECF 114). The State remained as an intervenor as to the transferred claims because of its continuing and significant interests in preserving the GRBE.

After the transfer of the case to this Court, Plaintiffs filed a Motion for Extension of Time to move for Leave to File a Third Amended Complaint. (ECF 117). The Federal Defendants objected to the motion with a pleading filed in the D.C. District Court. (ECF 118). The D.C. District Court denied the Plaintiff's motion without prejudice. Plaintiffs then filed a Motion for

Leave to File a Third Amended Complaint in the Utah District Court, which was opposed by the Federal Defendants and the State. Following briefing and oral argument, the Court granted Plaintiff's motion on August 22, 2022. (ECF 185). Plaintiffs then filed their Third Amended Complaint ("Complaint") on August 29, 2022, which is the subject of the current Motions to Dismiss.

## STANDARD OF REVIEW

When deciding a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the court may consider not only the complaint itself, but also the affidavits, deposition testimony, and other materials outside the complaint." *U.S. Synthetic Corp. v. Preethical, Ltd.*, 407 F. Supp. 2d 1274, 1276-77 (D. Utah 2005) (*citing United States v. Spectrum Emergency Care, Inc.*, 190 F. 3d 1156, 1160 n. 5 (10th Cir. 1999)). When jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of producing evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence. *Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003).

When deciding a motion to dismiss claims for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court must consider whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is not "bound to accept as true a legal conclusion couched as factual allegation." *Id.* (*quoting Twombly*, 550 U.S. at 555). Moreover, a complaint that makes "naked assertions devoid of further factual enhancement" is insufficient to state a claim for relief. *Id.* (internal quotations omitted). Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice.  *Id.* at 678.  A court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity" without converting the motion to a motion for summary judgment.  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (*quoting Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

## ARGUMENT

I.     **DEFENDANT'S FIRST AND THIRD CLAIMS FOR RELIEF SHOULD BE DISMISSED.**

A.     **Claims One and Three should be dismissed as time-barred.**

The Tribe's First Claim relates to the 1965 Deferral Agreement and the Decker Report's quantification of the Tribe's water rights.  The Tribe argues that following the execution of the Deferral Agreement, the United States (as the Tribe's trustee), was under a trust responsibility to act in the Tribe's best interests.  The Tribe claims that the Federal Defendants have failed to live up to that trust responsibility.  Despite the 1992 Settlement Agreement in CUPCA, the Plaintiffs argue that the controversy did not arise until 2012 "at the earliest."  (ECF 186, ¶¶ 202-214).  The Tribe is seeking that a declaration that the 1965 Deferral Agreement is void *ab initio* as a sham, except for its effect as a binding quantification of tribal water rights.  The Tribe's request that Defendants be estopped from repudiating the quantification of the water rights as defined in the 1965 Deferral Agreement.  Lastly, the Tribe is seeking judicial enforcement of the Federal Defendant's trust obligations to the full quantity of the Tribe's claimed water rights.[4]  *Id.* at p. 52.

---

[4] As an initial matter, the Tribe's Complaint continually asserts a general trust duty upon the United States related to the Tribe's water rights., However, the United States Supreme Court

It should be noted that the Tribe's Claim One under the Complaint is very similar to the Tribe's first claim for relief under the Second Amended Complaint, which was dismissed as time-barred by the D.C. District Court. The result here must be the same because the Tribe's modifications to the claim asserted in the Third Amended Complaint have not cured the fact that the claim is still time-barred. As Judge Nichols indicated in the D.C. District Court, the Tribe has "known, since at least 1992, that Defendants would not honor the Tribe's understanding of the scope of its water rights." (ECF 114, p. 9). Indeed, when CUPCA was passed in 1992, it "expressly designed and included a settlement agreement in Title V to 'quantify the Tribe's reserved water rights' and 'put the Tribe in the same economic position it would have enjoyed had the features contemplated by the [1965 Deferral Agreement] been constructed.'" *Id.* (*citing* 1992 Act, § 501(b)(1), (3), 106 Stat. at 4651).

In Claim One, the Tribe ignores the 1992 CUPCA Settlement Agreement and asks this Court to do the same. This would allow the Tribe to avoid the reality that the claim was not brought against the United States within the required six years after the right of action first accrued, and is, accordingly, time-barred by statute 28 U.S.C. § 2401(a). Further, the Tribe asks this Court to ignore the fact that Congress passed the 1992 Act to "settle once and for all any claims that the Tribe might have under the 1965 Deferral Agreement." (ECF 114, p. 4). Indeed, the Tribe has received "approximately $2 million per year in compensatory payments in

---

"has never granted relief for breach of that general duty by itself." *American Indian Law in a Nutshell*, William C. Canby, Jr. (7th ed., 2020, p. 48) *(referencing U.S. v. White Mountain Apache Tribe*, 537 U.S. 465 (2003); (*citing U.S. v. Jicarilla Apache Nation*, 564 U.S. 162, 165 (2011) ("The trust obligations of the United States to Indian tribes are established and governed by statute rather than the common law"). The Tribe does not point to any particular provision in CUPCA or any other statute as expressly creating this alleged specific trust requirement.

exchange for an express waiver of 'any and all claims relating to its water rights covered under the' Deferral Agreement." *Ibid.*

Claim Three of the Third Amended Complaint is similarly time-barred and should also be dismissed. This claim is substantially similar to Claim Four of the Second Amended Complaint, which was dismissed by the D.C. District Court. The Tribe asserts that the United States has failed to comply with its alleged trust duties to the Tribe, that the waiver of claims in CUPCA was invalid, and that even if the waiver was valid, it only applies to contract claims. These claims are without merit.

The main addition to the Third Claim in the Complaint appears to be an argument by the Tribe that the claim is not time-barred because of the "continuing violation doctrine." (ECF 186, ¶ 245). The Plaintiff cites 5 U.S.C. § 706(1) and "related case law" including *Wilderness Soc. v. Norton*, 434 F.3d 584, 593-596 (D.C. Cir. 2006), which addressed the continuing violation doctrine in *dicta* after finding that plaintiffs in that matter did not have standing. The continuing violation doctrine does not save the Tribe's claims from being time-barred.

Initially, 5 U.S.C. § 706(1)'s mechanism to compel federal agency action unlawfully withheld or unreasonably delayed is not applicable because there has not been a discrete and required action referenced by the Tribe. The United States Supreme Court has determined that only discrete, nondiscretionary, mandatory actions may be enforced through § 706(1). *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). "This standard reflects the common law writ of mandamus, which the APA [Administrative Procedure Act] carried forward in § 706(1)." *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016) (internal quotation marks omitted). Nothing in CUPCA, nor anything asserted by the Tribe, creates "a

specific, unequivocal command" or a "precise, definite act about which an official has no

discretion, whatsoever." *Norton*, 542 U.S. at 63.  In fact, the Plaintiffs attempt to have this Court

create a discrete and required action based upon legislative purpose, an alleged specific trust

relationship with the Federal Defendants, and subsequent legal memorandum from the

Department of Interior[5] must fail.  Cobbling together a non-discretionary and discrete action

from these various sources is not contemplated under § 706(1):

> Such a duty must be so plainly prescribed as to be free from doubt and equivalent
> to a positive command.  Where the duty is not thus plainly prescribed but depends
> on a statute or statutes the construction or application of which is not free from
> doubt, it is regarded as involving the character of judgment or discretion which
> cannot be controlled by mandamus.

*Consol. Edison Co. of New York v. Ashcroft*, 286 F.3d 600, 605 (D.C. Cir. 2002) (internal

brackets omitted).

　　　　Even if the Court were to accept that a discrete and required action was created under

CUPCA, the case law following the *dicta* put forth in *Wilderness Society v. Norton* has

foreclosed any possibility that Plaintiffs' "failure-to-act" claim under the continuing violations

doctrine would be successful in avoiding the six-year statute of limitations.  Indeed, "the vast

weight of authority holds that the continuing violations doctrine does not apply to failure-to-act

claims under Section 706(1)," and "most other Courts have rejected the application of the

continuing violations doctrine to agency inaction, reasoning that a contrary conclusion would

result in a '*de facto* elimination of any statute of limitation' because the 'limitation period would

never begin to accrue' so long as the agency failed to act." *Wild Horse Observers Association v.*

---

[5] In their Third Amended Complaint, the Tribe references a 1995 Department of Interior legal
memorandum regarding storage of Indian water rights to the Program Director for CUPCA and a
1996 certification by the Federal Defendants.

*Salazar*, 2012 WL 13076299 (D. N.M., Sept. 28, 2012) (*quoting Wild Fish Conservancy v. Salazar*, 688 F. Supp. 2d 1225, 1236 (E.D. Wash. 2010)).

The Tenth Circuit has previously held as much in *Ute Distribution Corp. v. Secretary of Interior of U.S.*, 584 F.3d 1275 (10th Cir. 2009).  In that matter, the plaintiffs argued that their action was "necessarily timely because the Secretary had, and continue[d] to have, a continuing duty to properly manage any undistributed assets, including what the [plaintiffs] claim[ed] were the undistributed water rights and water rights claims." *Id.* at 1282.  However, the Tenth Circuit agreed with the federal defendants that the continuing wrong doctrine is not applicable when "the plaintiff's injury is definite and discoverable, and nothing prevented plaintiff from coming forward to seek redress . . . Thus, [the plaintiff] cannot rely on the continuing wrong doctrine to save its action from being dismissed as untimely." *Id.* at 1283.

The Plaintiffs' Claim One and Claim Three are substantially like earlier-dismissed claims asserted in the Second Amended Complaint and should properly be dismissed as time-barred. None of the amendments to these claims made by the Tribe have cured that they are time-barred and that Plaintiffs failed to act within the required statutory time periods.  This Court should dismiss Claims One and Three as such.

**B.      Even if Claims One and Three are not time-barred, they should be dismissed for failure to state a claim and lack of jurisdiction.**

Even should this Court determine that the Claims One and Three are not time-barred, the Claims should still be dismissed due to the Tribe's failure to state a claim and the Court's lack of subject-matter jurisdiction over the claim.  Despite finding the Tribe's claims time-barred, the D.C. District Court reviewed the various arguments put forth by the Tribe to determine if any created a specific trust duty breached by the Federal Defendants.  (ECF 114, pp. 13-19).  The

11

Court found that "[in] sum, neither the 1899 Act, the 1906 Act, nor the 1992 Act demonstrate that the government 'expressly accepts' any of the specific trust duties alleged by the Tribe.  And as the Tribe has not identified an enforceable duty, it fails to allege a necessary predicate for establishing an implied cause of action."  (ECF 114 at 19).

Despite the D.C. District Court finding that the Tribe's claims were time barred, and that there was no enforceable specific trust duty, the Court's opinion still evaluated Plaintiff's claim that the Tribe's waiver of claims under § 507 of the 1992 Act was invalid.  The Court found that the Tribe had waived any claims to its water rights under the 1965 Deferral Agreement "as soon as the Tribe received the 'moneys' described in §§ 504, 505, and 506 . . . The Tribe acknowledged its receipt of those funds in a 2006 complaint filed in the Court of Federal Claims."  (ECF 114 at 19, FN 12).

Further, the Tribe continues to assert in Claims One and Three of the Third Amended Complaint that it did not become aware of the controversies giving rise to these claims until the middle of 2012.  Judge Nichols reviewed this argument and rejected it.  The D.C. Court found that the 2012 Settlement Agreement "includes no provisions about tolling or claim accrual" and that "the Tribe knew that back in 1992" that the United States did not share the Tribe's view on its water rights.  *Id.* at 10.  The Court similarly rejected the Tribe's arguments that the continuing violation doctrine applied given that there was "no congressional directive" to apply the doctrine. *Ibid.*

In addition, and as noted in the State's prior Motion to Dismiss the Second Amended Complaint, the State was not party to the 1965 Deferral Agreement (ECF 22-1) and therefore cannot be bound by the terms of Agreement. (ECF 67, p. 9).  Further, the Deferral Agreement

could not have quantified the Tribe's water rights without adjudication.  (ECF 67, p. 14).

Indeed, the Tribe's Complaint indicates that the parties that entered into this Deferral Agreement

were "Defendant's BIA, USBR, CUWCD, and the Tribe."  (ECF 186, ¶131).  The State

Engineer, the State of Utah, and the Governor were not signatories, and the only reference in the

Agreement to the State Engineer relates to water right records.  (ECF 22-1, pp. 2-7).  As the State

was not party to the 1965 Deferral Agreement, it cannot be bound by it.  *See, e.g., E.E.O.C. v.*

*Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind

a nonparty."); *Ebling v. U.S. Dep't of Justice*, 796 F. Supp. 2d 52, 63 (D.D.C. 2011) ("[i]t is a

fundamental and unobjectionable principle that a contract cannot bind a non-party – i.e. someone

who has not assented to be bound by its terms") (*citing Waffle House, Inc.*, 534 U.S. at 294).

  The Tribe continues to assert in the Complaint that in 1973 "the Utah State Legislature

passed a Concurrent Resolution, signed by the Governor, recognizing the CUWCD had bound

Utah to the promises made in the Deferral Agreement." (ECF 186, ¶ 140).  However, the

CUWCD could not have bound the State to the Deferral Agreement. Water conservancy districts

are political subdivisions of the State.  *See* UTAH CODE ANN. §§ 17B-1-102 (35); 17B-1-

102(13)(b)(ii)(J); 17B-1-103(1).  *See also Jenkins v. Jordan Valley Water Conservancy Dist.*,

321 P.3d 1049, 1050 (Utah 2013) (describing the Jordan Valley Water Conservancy District as

"a political subdivision of Utah that operates about 275 miles of pipeline through Salt Lake

County.").  Such political subdivisions can only act within the powers granted to them by statute.

*See State v. Hutchinson*, 624 P.2d 1116, 1121 (Utah 1980).  Indeed, the statutes governing water

conservancy districts in the State explicitly limit the districts' power, stating that "[e]ach water

conservancy district is governed by and has the powers stated in" UTAH CODE ANN. §§ 17B-2a-

1001 *et seq.* (which applies specifically to water conservancy districts) and § 17B-1-101 *et seq.* (which applies to all local districts).  While these statutes provide some authority for such districts to enter into contacts or agreements, nothing in the statutes provides the districts the authority to bind the State sovereign, or any of its officers, to any such agreement.  *Id.* §§ 17B-2a-101; 17B-1-101.  If the legislature had intended to provide this authority to water conservancy districts, "it could have easily provided an express grant of authority within either section . . ." *Metro. Water Dist. of Salt Lake and Sandy v. Questar Gas Co.*, 361 P.3d 709, 714 (Utah 2015) (*citing Standard Fed. Save. & Loan Ass'n v. Kirkbride*, 821 P.2d 1136, 1138 (Utah 1991) ("If that is what the legislature intended to accomplish, it certainly kn[ew] how to do so.").  Thus, CUWCD lacks the authority to bind the State to the Deferral Agreement.

Further, even if the 1973 Legislative Concurrent Resolution that Plaintiffs cite had given CUWCD the authority to bind the State to the Deferral Agreement, Plaintiffs' assertion would still fail to state a claim upon which relief could be granted.  The critical language on which Plaintiffs would appear to rely is a "whereas" clause of the resolution that states, in relevant part, "the State of Utah and [CUWCD] have negotiated and executed a contractual [sic] agreement recognized in the Colorado River Basin Project Act of 1968 with Indian Tribes for a deferral of water use . . ."  Laws of Utah, 1973 (1st Special Session) p. 26 (H.C.R. No. 2).[6]

It is also important to note that the resolution contained factual inaccuracies.  First, there is no evidence suggesting the State helped "negotiate" the Deferral Agreement.  Second, as discussed previously, the Deferral Agreement itself demonstrated the State did not "execute" the agreement.  (ECF 22-1).  The only portion of the Resolution that mentions the Deferral

---

[6] *See* ECF No 37-1.

Agreement is a "whereas" clause that simply explains, to the best of the drafter's understanding, why the resolution was necessary. *See* (ECF 37-1). The "resolved" or action clause nowhere mentions the Deferral Agreement, nor does it any way bind the State. *Ibid.* The clause simply requests completion of the Central Utah Project, and requests that "contracts be let immediately to continue construction on the Bonneville Unit as planned and to proceed with the planning and construction of all other authorized units (Upalco, Uintah, Jensen) of the Central Utah Project in order to avoid water rationing, economic limitations and other hardships by the citizens of Utah." *Ibid.*

Regardless of the factual inaccuracy of the Concurrent Resolution, and even assuming, *arguendo*, the intent of the resolution was to bind the State to the Deferral Agreement, Plaintiffs fail to state a claim on which relief can be granted because resolutions of the Utah Legislature are not legally binding. *See, e.g., Grand Cnty. Emery Cnty.*, 52 P.3d 1148, 1154 (Utah 2002) ("a resolution of the Utah Legislature is not legislation and does not have the force or effect of law) (*citing Salt Lake City v. State Tax Comm'n*, 813 P.2d 1174, 1177 (Utah 1991); 73 Am.Jur.2d Statutes § 3 (1974)). Rather, a resolution is "only a consensus as to particular policy." *Mountain States Legal Fund v. Utah Public Service Comm'n*, 636 P.2d 1047, 1057 (Utah 1981). Thus, the 1973 Concurrent Resolution simply expressed the State's desire that the federal government continue construction of the CUP. It did not (and legally could not) retroactively bind the State to the terms of the Deferral Agreement or give Plaintiffs a claim upon which this Court can grant relief.

Regardless of whether the State was a party to the Deferral Agreement, this Court lacks jurisdiction to adjudicate Plaintiff's water claims. The parties to the Deferral Agreement could

never have quantified Plaintiff's water rights – even if the State had helped negotiate, had signed,

or was bound by the Deferral Agreement.[7]   Federal reserved water rights may only be

determined by a court, either in a state court general adjudication proceeding or a similar federal

proceeding.  *See Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 811 (1976)

(holding court proceedings are implied where "all water users on a stream, in practically every

case, are interested and necessary parties"); *Jensen v. Jones*, 270 P.3d 425, 428 (Utah 2011)

("[t]he statute governing change application proceedings leaves the adjudication of the rights

which the applicant may have to the courts in another kind of a proceeding") (internal quotation

marks and citations omitted).  In either type of proceeding, the United States claims its reserved

rights on behalf of a tribe.  *See Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476, 1482 (D.C. Cir.

1995) (the U.S. holds water rights in trust for the tribe, but tribes are dependent on the U.S. for

their water claims; the tribe "cannot force the government to take a specific action [on its view of

water right claims] unless a treaty, statute, or agreement imposes, expressly or by implication,

that duty").  *See also Nat'l Wildlife Fed'n v. Andrus*, 642 F.2d 589, 612 (D.C. Cir. 1980)

("[w]ithout an unambiguous provision by Congress that clearly outlines a federal trust

responsibility, courts must appreciate that whatever fiduciary obligation that exists, it is a limited

one only.").

With passage of the McCarran Amendment, 43 U.S.C. § 666(a), Congress consented to

joinder of the United States for the adjudication of rights to use of water of a river system or

---

[7] In any event, Plaintiffs apparently repudiated the Deferral Agreement in a 1989 Ute Tribe Business Committee's resolution.  "Because the non-Indian parties to the 1965 Deferral Agreement have materially and injuriously breached their obligations to the Ute Indian Tribe, the Tribe declares the agreement no longer valid."  Uintah and Ouray Tribal Bus. Comm. Res. 89-176 (approved and signed unanimously).  *See* (ECF 67, Ex. A).

other water source, and this consent extends to the adjudication of tribal water rights.  See *Colo. River*, 424 U.S. at 809-813.  State and federal courts each have jurisdiction to adjudicate tribal reserved water claims.  "Regardless of whether a stream adjudication is resolved by consent, negotiation, or litigation, the underlying adjudicated water right must arise under either federal or state law." *U.S. v. Orr Water Ditch Co.*, 309 F. Supp. 2d 1245, 1248 (D. Nev. 2004).

Even if a contest over reserved water right claims is resolved by settlement, that settlement must be presented to a court for approval.  *See generally Arizona v. California*, 547 U.S. 150, 152 (2006) (approving settlement of the Fort Yuma Reservation reserved water right claims); *Nevada v. U.S.*, 463 U.S. 110, 118 (1983) (discussing settlement of tribal reserved water rights presented to and adopted by a federal court); *Colo. River*, 424 U.S. at 811 (adjudicated water rights are "interlocking" and thus "any order or action affecting one right affects all such rights" necessitating the involvement of "all water users on a stream, in practically every case"); *State ex rel. State Engineer v. U.S.*, 425 P.3d 723, 729 (N.M. App. 2018) (discussing settlement of tribal reserved water rights presented to and approved by a state court).

In a Utah general water rights adjudication proceeding, the State Engineer presents a reserved water rights settlement to the adjudication court in the form of what Utah statutes refer to as a proposed determination – his or her recommendation as to how the court should determine and quantify the rights.  *See* UTAH CODE ANN. § 73-4-11.  Thereafter, individuals holding rights affected by the proposed determination may raise objections. *Ibid.*  Generally, as part of a reserved water rights settlement, the State Engineer agrees that it, along with the United States on behalf of a tribe, will defend the proposed determination recommending the reserved rights against all objections until the court enters an appropriate decree. *Ibid.*  Upon completion

of this judicial process, the court enters a decree quantifying the reserved water rights.  *See* Utah Code Ann. §§ 73-4-12 and 73-4-15.  While the parties may agree to seek approval from the court for a certain quantity of water, reserved rights are not determined or quantified until the court enters its decree.  *See, e.g., United States v. Adair*, 723 F.2d 1394, 1406 (9th Cir. 1983) (noting "[a]ctual quantification of the [reserved] rights [at issue] will be left for judicial determination, consistent with the decree in this action, by the State of Oregon under the provisions of [the McCarran Amendment].").  *See also*, *Little Cottonwood Water Co. v. Kimball*, 289 P.2d 116, 117 (Utah 1930) ("the determination of existing rights . . . is a peculiarly judicial function").  Plaintiff's assertion that the Deferral Agreement "quantified" Plaintiff's water rights claims is simply incorrect and impossible as a matter of law.

Further, the McCarran Amendment only waives the United States' immunity where it is joined as a defendant in a general stream adjudication.  43 U.S.C. § 666(a). *See also Dugan v. Rank*, 372 U.S. 609, 618-619 (1963); *U.S. v. Dist. Court for Eagle Cnty.*, 401 U.S. 520, 525 (1971); *Gardner v. Stager*, 103 F.3d 886, 888 (9th Cir. 1996).  In the case of the Uinta Basin (the area in which Plaintiff's reservation is located), the Utah State Engineer has not formally joined the United States.  *See In the Matter of the General Determination of all the Rights to the Use of Water, Both Surface and Underground, Within the Drainage Area of the Uinta Basin in Utah, Dist. Ct. for Duchesne County, State of Utah*, Civil No. 56080056 CV ("Uinta Basin Adjudication").  Therefore, no claims from the United States are due, including reserved water right claims on behalf of Plaintiff.  However, formal joinder of the United States in the Uinta Basin Adjudication would give the state district court jurisdiction to quantify Plaintiffs' water rights.

Lastly, even if Plaintiffs' first and third claims were not time barred, and even if the State was a party to the 1965 Deferral Agreement and the Agreement properly quantified Plaintiffs' water rights, and even assuming that the Tribe did not waive any and all claims in the 1992 Act, Claims One and Three of Plaintiffs' Complaint should still be dismissed as barred by laches because the Tribe unreasonably delayed filing for over twenty-five years after the passage of CUPCA.  If a party is alleged to have violated the terms of a compact or agreement, its opponent must ask the court for an equitable remedy, which is then subject to the usual equitable defenses. For this reason, the equitable doctrine of laches governs the timeliness of equitable claims challenging compacts or agreements. *Biodiversity Conservation Alliance v. Jiron*, 762 F.3d 1036, 1096 (10th Cir. 2014) (affirming dismissal of breach of contract claim for six-year delay in bringing case). *See also*, *Delcostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 162 (1983); *Brennan v. Nassau Cnty.*, 352 F.3d 60, 63-64 (2d Cir. 2003); *Bergman v. Mich. State Transp. Comm'n*, 665 F.3d 681, 683-684 (6th Cir. 2011).

The laches defense bars a party's dilatory action.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121-122 (2002).  It stems from the principle that "equity aids the vigilant and not those who slumber on their rights." *Kansas v. Colorado*, 514 U.S. 637, 687 (1995).  Laches bars a claim when there is: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 121-22.  *See also City of Sherrill, N.Y. v. Oneida Indian Nation of N.Y.*, 544 U.S. 197, 217-219 (2005) (applying laches to deny relief for Indian Tribe's long delay in filing claims).  Plaintiffs in this case have unreasonably delayed filing this claim.  The Tribe has been aware of the existence of the 1990 Compact and CUPCA since 1992, yet Plaintiffs waited over twenty-five years to file

its claims and has not offered any basis for the delay other than to say they were not aware of the

claims until 2012, an argument belied by their acknowledgment of CUPCA.

Moreover, the State has relied on the finality of the Compact, as Congress ratified it and

it is codified in CUPCA, as part of what CUPCA calls "Title V – UTE INDIAN RIGHTS

SETTLEMENT." § 503(a).  The State has relied on the fact that, as part of the negotiated

settlement reached in CUPCA, which incorporated by reference and ratified the 1990 Compact,

Plaintiffs would receive the amount of water the Compact indicates.  The State has planned its

future use of its claims to Colorado River water rights based on what Plaintiffs would receive,

has educated the public of that fact, and has otherwise planned accordingly.  *See, e.g.,* UTAH

CODE ANN. § 73-21-103.  But this reliance comes only in the context of the settlement that

CUPCA effectuated.  Plaintiffs have also been enriched by the settlement by accepting

significant monetary payments under CUPCA.  *See* 2006 CFC Compl. ¶¶ 15-18, 36, Defs.' Ex.

H, ECF 68-8.  Plaintiffs' unreasonable delay in filing this claim, while at the same time

accepting monetary payments provided by CUPCA, materially prejudiced the State, and

therefore, Claims One and Three should be barred by laches.

## II. THE STATE IS A NECESSARY PARTY TO CLAIMS NINE AND TEN INVOLVING THE GREEN RIVER BLOCK EXCHANGE CONTRACT, AND THOSE CLAIMS SHOULD BE DISMISSED.

### A. The State is a necessary party to Claims Nine and Ten.

Claims Nine and Ten of Plaintiffs' Third Amended Complaint relate to the GRBE

Contract.  Specifically, in Claim Nine, Plaintiffs argue that the GRBE Contract between the State

and the Federal Government is invalid because the State does not have perfected water rights in

the Green River, and that the Bureau of Reclamation violated the APA in entering the GRBE

Contract.  In Claim Ten, the Plaintiffs allege that the Environmental Assessment (EA) performed for the GRBE contract was insufficient and should have, instead, been a full Environmental Impact Statement (EIS).  The Plaintiffs argue that the FONSI should be set aside in accordance with the Administrative Procedure Act (APA).  (ECF 186, ¶¶ 278-310).

As an initial matter, it is not entirely clear whether Plaintiffs intended that the State be a party to Claims Nine and Ten.  When the State was initially granted intervention in this matter, the basis for the lawsuit was the First Amended Complaint, filed January 22, 2019, which did not include claims related to the GRBE.  (ECF 25).  On February 5, 2020, the D.C. District Court granted the State's intervention following a motion and briefing.  (ECF 52).  Plaintiffs then filed a Second Amended Complaint on April 3, 2020, that included a challenge to the GRBE contract under multiple claims.  (ECF 57).  The Plaintiffs' Third Amended Complaint, filed August 29, 2022, now includes two interrelated claims concerning to the GRBE contract.  (ECF 186, ¶¶ 278-310).

While the headings for both Claims Nine and Ten in the Plaintiffs' Third Amended Complaint list those claims as being "Against the Federal Defendants," the substantive portion of the Claims then describe the State being a party to the GRBE Contract and argues that the State did not have any water rights with which to contract, and even if it did, those water rights were "unperfected" and not legally recognizable.  (ECF 186, ¶¶ 278-310).  Clearly the State, as a contracting party, should be named as a necessary party in Claims Nine and Ten.  Indeed, as explained by the Seventh Circuit in *U.S. ex rel. Hall v. Tribal Development Corp.*, 100 F.3d 476, 479 (7th Cir. 1996), "it is worth repeating the oft-quoted observation of the Ninth Circuit that '[n]o procedural principle is more deeply imbedded in the common law than that, in an action to

21

set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.' *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975), *cert. denied,* 425 U.S. 903 (1976); *see also Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 547 (2d Cir. 1991) (*quoting Lomayaktewa*, 520 F.2d at 1325), *cert. denied,* 502 U.S. 818 (1991); *Enterprise Management Consultants v. U.S. ex rel. Hodel*, 883 F.2d 890 (10th Cir. 1989) (same); *Jicarilla Apache Tribe v. Hodel*, 821 F.2d 537, 540 (10th Cir. 1987) (same); *Niagara Mohawk Power v. Tonawanda Band*, 862 F. Supp. 995, 1004 (W.D.N.Y. 1994) (same); *Travelers Indem. Co. v. Household Intern'l, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991) ("[T]he precedent supports the proposition that a contracting party is the paradigm of an indispensable party.") (collecting cases)."  Clearly the State should be a party to Claims Nine and Ten.

If the Plaintiffs chose to not include the State as a party in Claims Nine and Ten of the Complaint, the State should be added pursuant to Fed. R. Civ. Proc. 19.  Under Rule 19, a motion to dismiss may be granted under Rule 12(b)(7) when there is absent a party without whom complete relief cannot be granted, or whose interest in the dispute is such that to proceed in that party's absence might prejudice that entity or the parties already before the court.  *SDC Financial, LLC v. Bremer*, 2019 WL 4393543, *11 (M.D. Tenn. Sept. 13, 2019).  Under Rule 19, a typical formulation of a court's analysis for dismissals can be described as follows:

> Our review of a dismissal under Rule 12(b)(7) has three parts.  First, guided by the provisions of Rule 19(a), we must decide whether it is "desirable in the interests of just adjudication" to join [the party].  If so, we must determine next whether a court feasibly could order that the [party] be joined.  Finally, if a court cannot so order, then, guided by the provisions of Rule 19(b), we must decide whether "in equity and good conscious" the case may proceed in the absence of the [party].

*Paiute-Shoshone Indians of Bishop Community of Bishop Colony, Cal. v. City of Los Angeles*,
637 F.3d 993, 997 (9th Cir. 2011) (internal citations omitted).

As a contracting party to the GRBE Contract whose rights are being challenged by the
Tribe, the State is clearly an indispensable party. It is the State's position that these two claims
should be dismissed conditionally, and Plaintiffs should be granted expedited leave to file an
amended complaint that adds the State as Defendants to Claims Nine and Ten.  Should Plaintiffs
fail to add the State as a defendant, or if joinder is not feasible at this point in the litigation, those
claims should be dismissed.  *See*, *Three Starts Production Co., LLC v. BP America Production
Co.*, 2012 WL 32916, *2 (D. Colo. Jan. 6, 2012) (court ordered joinder of parties or dismissal of
action if joinder impossible).  *See also*, *In re Apple iPhone 3G Products Liability Litigation*,
2011 WL 6019217, *4 (N.D. Cal. Dec. 1, 2011) (court granted the motion to dismiss under the
condition that the plaintiff add a previously omitted defendant to their amended complaint).

While litigation in this case has been ongoing for well over four years, given that the
proceedings are still in the motion to dismiss stage and the amendment to the complaint would be
very limited, it would appear feasible at this point for the Court to order the State added as a
party to Claims Nine and Ten.  In lieu of dismissing the claims conditionally to allow the
Plaintiffs to amend its complaint to add the State as a party to claims Nine and Ten, the State
requests that the Court order the State, as an indispensable contracting party, be added as a
defendant to Claims Nine and Ten via the mechanism described in *Paiute-Shoshone*.

The State of Utah, as a contracting party to the GRBE, is a necessary party to claims nine
and ten.  Those claims should be conditionally dismissed so that Plaintiffs can add the State as a

party to those claims, and failure to do so should result in dismissal.  In the alternative, the Court

should add the State as defendants to Claims Nine and Ten.

## III.     THE ELEVENTH CLAIM FOR RELIEF SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST THE STATE DEFENDANTS.

Plaintiffs' Eleventh Claim for Relief should be dismissed for failure to state a claim

against the State Defendants. That claim seeks relief under 42 U.S.C. § 1983 (for alleged

violations of the Due Process and Equal Protection Clauses of the U.S. Constitution), and Title

VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Plaintiffs failed to state a claim under

these statutes when an almost identical claim was before the District of the District of Columbia,

and they fail to state a claim here.

Despite including two federal statutes in one claim, the claim should not survive against

the State Defendants. Plaintiffs are not entitled to relief under § 1983. The State, and the

Individual Defendants in their official capacity, are not "persons" subject to suit. Plaintiff has not

pleaded any facts showing that the Individual Defendants—Spencer Cox, the current Governor

of Utah, and Teresa Wilhelmsen, the current Utah State Engineer—have undertaken any actions

whatsoever violative of the U.S. Constitution or the Tribe's constitutional rights. Instead,

Plaintiffs allege general past discriminatory behavior, allege that Governor Cox and State

Engineer Wilhelmsen are at the reins now, and therefore they must be "participated in, adopted,

and/or ratified one or more acts or omissions … custom or practice… [that] Deprive the Ute

Tribe and the Class Action Plaintiffs of the beneficial use of the Tribe's Reserved Water Rights."

(ECF 186, ¶ 322).  But alleged past wrongs do not create personal participation in

unconstitutional actions. Section 1983 does not allow Plaintiffs to hold Governor Cox and Ms.

Wilhelmsen liable for the constitutional torts of others, of any inferiors, or of long-gone

successors. And to the extent Plaintiffs' claims seek injunctive or declaratory relief against the

Individual Defendants, Plaintiff fails to state a current, ongoing constitutional violation to allow

them to proceed under *Ex parte Young.*

Additionally, Plaintiffs are not entitled to relief under Title VI. A Title VI claim cannot

be brought against individuals. It cannot be brought against the State because the State is not a

"program or activity" subject to Title VI liability.  And even if Plaintiffs could properly sue some

State entity, they have not sufficiently alleged intentional discrimination (occurring within the

statute of limitations) by any state actor within a State program or activity to trigger liability.

### A.    Plaintiffs have failed to state a claim under § 1983.

Section 1983 provides a civil remedy against a "person" who "under color of [state law],

subjects, or causes to be subjected, any [person] to the deprivation of any rights, privileges, or

immunities secured by the Constitution and [federal] laws  . . ." 42 U.S.C. § 1983. But Plaintiffs'

claims against the State, the Individual Defendants (in their official or individual capacities), or a

claim for injunctive or declaratory relief, cannot survive.

### 1.    Plaintiff cannot bring a § 1983 claim against the State.

As a matter of statutory construction, § 1983 claims may not be brought against the State

of Utah. "[N]either a state nor its officials acting in their official capacities are 'persons' under §

1983." *Will v. Mich. Dep't of State Polic*e, 491 U.S. 58, 71 (1989); *see Hartman v. Kickapoo

Tribe Gaming Comm'n*, 319 F.3d 1230, 1234 (10th Cir. 2003); *see also Witesell v. Utah*, 82 F.

App'x 7, 8 (10th Cir. 2003) (unpublished) (holding that the State of Utah is not a "person within

the meaning of § 1983").

Plaintiffs allege that the State has "waived sovereign immunity by seeking and being granted intervention in this suit." (ECF 186, ¶ 28).  Regardless of whether that's a correct statement of the law, it's wholly irrelevant to the § 1983 analysis.

In *Will*, the issue was not whether a § 1983 damages claim against a state is barred by the Eleventh Amendment.  The issue was whether a state can ever be sued for § 1983 at all because it is not a "person" who "subjects … any [other person] to the deprivation of any rights, privileges or immunities secured by the [federal] Constitution and laws …." 42 U.S.C. § 1983. The *Will* Court specifically noted that, because the case was prosecuted in the Michigan state court system, with the Court reviewing a decision of the Michigan Supreme Court, the Eleventh Amendment issue was irrelevant.  Because the Eleventh Amendment "does not apply in state courts," the "question of whether a State is a person under § 1983 [as a matter of statutory interpretation is] squarely before us." *Will*, 491 U.S. at 63–64.  The Court then determined that, as a matter of statutory interpretation—not as a matter of constitutional immunity—the state, arms of the state, and officials in their official capacity are not "person" subject to suit under § 1983. *Id.* at 71.

As another example, a state cannot be sued under § 1983 even when the state has removed a case to federal court, waiving Eleventh Amendment immunity.  *Lapides v. Bd. of Regents of Univ. of Ga.*, 535 U.S. 613, 617 (2002). Utah's role in this litigation cannot change the scope of § 1983. Intervention or otherwise, Eleventh Amendment or otherwise, Plaintiffs' § 1983 claims against the State must be dismissed.

2.    **Plaintiffs' § 1983 claims against the Individual Defendants are insufficient.**

Plaintiffs' § 1983 claims likewise cannot proceed against Governor Cox and Ms. Wilhelmsen. First, it is unclear if Plaintiffs are suing Governor Cox and Ms. Wilhelmsen in their official or individual capacities. Plaintiffs have pleaded that they bring their action against "Spencer Cox, in his capacity as Governor of Utah, and Teresa Wilhelmsen, P.E. in her capacity as the Utah State Engineer and Director of the Utah Division of Water Rights, …."  (ECF 186, p. 2).  To the extent that the Third Amended Complaint should be read as a complaint against the Individual Defendants in their official capacities, the § 1983 claim is barred, because a § 1983 claim against an individual state official acting in his or her official capacity "is no different from a suit against the State itself." *Will*, 491 U.S. at 71. Plaintiffs' § 1983 claims for damages cannot be brought against these two State officials in their official capacities.

Plaintiffs have not pleaded a claim for damages against the Individual State Defendants in their individual capacities. "[G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). As such, for a plaintiff to proceed against a government official "a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the constitution." *Id.*  Plaintiffs have failed to do so. In other words, a plaintiff's complaint must "make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in original).

Plaintiffs mention Governor Cox and State Engineer Wilhelmsen in only three paragraphs in the complaint each—once listing their titles (ECF 186, ¶¶ 21, 22), once asserting

that the Governor has general responsibility for "implementing state laws" and ensuring that

Utah's laws "comply[] with federal laws" (ECF 186, ¶ 320) and that the State Engineer  is

"responsible for the general administration of the waters of the state…" (ECF 186, ¶ 321), and

then generally alleging that they both "have participated in, adopted, and/or ratified one or more

acts or omissions, taken under color of Utah state law, custom or practice, which acts or

omissions are depriving the Ute Tribe and the Class Action Plaintiffs of the beneficial use of the

Tribe's Reserved Water Rights in violation of the Plaintiffs' members' constitutional guarantees

of due process and equal protection." (ECF 186, ¶ 322).

They do not cite *any* of the Individual State Defendant's "own actions," causing a

constitutional violation.  Rather, they generally and conclusory allege that they "participated in,

adopted, or ratified", (1) the State of Utah's repudiation of the quantification of the Tribe's

Reserved Water Rights under the 1965 Deferral Agreement; (2) the State's solicitation and

approval of the Green River Block Exchange Contract, granting the State of Utah administrative

authority over water releases from Flaming Gorge Dam and Reservoir; (3) the State of Utah's

continued assertion of administrative jurisdiction over tribal waters inside the Tribe's

Reservation in violation of Federal statutory and decisional law,… and (4) one or more actions

taken in concert or collusion with one or more Federal Defendants and/or their officers to insure

that no tribal waters  much less sufficient actions to show a plausible claim of a constitutional

violation." *Id.*  This is insufficient.

A prime example of the pleading standards required to state § 1983 claims against high-

level government officials comes from the watershed case establishing the 12(b)(6) dismissal

standard in civil actions generally—*Ashcroft v. Iqbal.*  In that case, Javaid Iqbal, a person of the

Islamic faith who was detained and allegedly mistreated while in custody following the September 11, 2001 attacks.  556 U.S. at 666.  Iqbal named former Attorney General John Ashcroft and former FBI Director Robert Muller as defendants, alleging that they adopted unconstitutional policies which subjected Iqbal to harsh conditions of confinement on account of his race, religion, or national origin.  *Id.*

The Supreme Court determined that Iqbal did not plead a plausible claim against General Ashcroft or Director Muller, because the only facts asserted by Iqbal was that those two defendants adopted a policy of approving restrictive conditions of confinement for post-September-11th detainees until cleared by the FBI.  *Id.* at 683.  Though Iqbal alleged that General Ashcroft was the "principal architect of," and Director Muller was "instrumental" in, "adopting an executing" a policy that "maliciously subjected" Iqbal to harsh conditions of confinement "solely on account of [his] religion, race, and/or national origin, which they "knew of, condoned, and willfully and maliciously agreed to …." *Id.*at 680–81.  They alleged that, post-9/11 the FBI "under the direction of" Director Muller, detained and arrested thousands of Arab Muslim men" and that Ashcroft and Muller "approved" of the policy of allowing those detainees to be housed in super-maximum security conditions.  *Id.* at 681. According to the Court, the allegations regarding intent were "conclusory," the remaining facts either did not show any personal participation in any unconstitutional activities or did not show "more than the mere possibility of misconduct …"  *Id.* at 679.  Because General Ashcroft and Director Muller "cannot be held liable unless they themselves acted [in violation of the constitution]," and because any remaining allegations were conclusory, the case against them had to be dismissed for failure to state a plausible claim.  *Id.* at 683.

29

In this case, Plaintiffs have even fewer allegations against Governor Cox and State Engineer Wilhelmsen.  They make conclusory allegations about "participating in" policies or actions that took place years before the relevant statute of limitations (and even years before Governor Cox and State Engineer Wilhelmsen took office).[8]  They generically allege that they both "ratified" polices but provide no evidence of any "ratification" except to implicitly argue that they feel aggrieved now, and Governor Cox and State Engineer Wilhelmsen are public officials now.  And they state insufficient, barebones allegations of conspiracy with unnamed federal officials.  *See Robbins*, 519 F.3d at 1249–50.

As in *Iqbal*, Plaintiffs do not allege any facts showing any personal participation by either Governor Cox or State Engineer Wilhelmsen—the best they can do is allege that they are high-level policy makers in charge after allegedly discriminatory activity took place. The Court in *Iqbal* recognized that personal participation is required, that conclusory statements that government defendants engaged in intentional discrimination is insufficient, 556 U.S. at 679–81, and that allowing a claim to go forward against high-level officials in such circumstances would "exact heavy costs in terms of efficiency and expenditure of valuable … resources that might otherwise be directed to the proper execution of the work of the Government."  *Id.* at 685.

Like Plaintiffs' Complaint, Mr. Iqbal's complaint was replete with factual allegations. *See id.* at 668 (citing to paragraph 154 of the amended complaint).  And the facts in Iqbal's complaint contained allegations against other individuals, some of which the Court believed were concerning.  *See id.* at 666, 684.  Like Plaintiffs, Iqbal pleaded and argued that these high-

---

[8] Governor Cox was inaugurated in 2021.  State Engineer Wilhelmsen was appointed in 2020. https://naturalresources.utah.gov/dnr-newsfeed/governor-herbert-appoints-teresa-wilhelmsen-as-new-state-engineer

ranking officials could be liable for directing institutions that arguably violated his rights, so long as the officials had knowledge of and acquiesced in the unconstitutional conduct. *Id.* at 669, 677. Like Plaintiffs' complaint, Iqbal pleaded the existence of circumstances which may have had a disparate impact on one protected class. *Id.* The Supreme Court in *Iqbal* affirmed the dismissal of the § 1983 claims against the high-level, supervisory officials in *Iqbal*; Judge Nichols dismissed almost identical claims earlier in this case; *see Ute Tribe v. Dep't of Interior*, 560 F. Supp. 3d 247, 264–65 (D.D.C. 2021); and this Court should follow that lead and do the same on this complaint.

### 3.   Plaintiffs have not pleaded a claim for declaratory or injunctive relief under § 1983.

Additionally, Plaintiffs cannot bring § 1983 claims against Governor Cox and State Engineer Wilhelmsen for declaratory or injunctive relief. State officials are subject to suit in their official capacity for declaratory and injunctive relief only for ongoing violations of federal law. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908). If there are no "ongoing violations of federal law," then declaratory and injunctive relief are improper. *Green v. Mansour*, 474 U.S. 64, 71, 73 (1985). In such a circumstance, the Eleventh Amendment "does not permit judgment against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Plaintiffs do not allege that either Governor Cox or State Engineer Wilhelmsen are currently violating federal law in any specific way. Rather, they assert that "the events of 1905-1910 established a pattern of invidious discrimination on the part of the Defendants that continues to this day." (ECF, 186, ¶ 216). Plaintiffs make other allegations about other entities but fail to allege facts showing that Governor Cox or Ms. State Engineer Wilhelmsen themselves

took action "for the purpose of discriminating on account of race …." *Iqbal*, 556 U.S. at 677. Plaintiffs' attempt to convert the alleged sins of the past into the constitutional violations of the present and future are not enough to save its § 1983 claim.

Regardless of whether Plaintiffs' § 1983 claim is read to seek damages or injunctive relief, against the individuals in their individual or official capacity, or against the State, the result is the same: clear judicial authority demands that the eleventh claim under § 1983 be dismissed.

### 4.   Plaintiffs' Title VI Claims fail to state a claim.

Finally, Plaintiffs include as part of the Eleventh Claim a citation to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. That statute provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Id*.  A "program or activity" includes "(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or (B) the entity of such State or local government that distributes such assistance  . . ." 42 U.S.C. § 2000d-4a.  The Supreme Court has implied a private right of action, in certain circumstances, that allows individual plaintiffs to sue for damages or injunctive relief under Title VI. *Alexander v. Sandoval*, 532 U.S. 275, 279–80 (2001).  However, for several reasons, Title VI does not provide Plaintiff with a claim against the State Defendants in these circumstances.

First, Plaintiffs fail to state a Title VI claim against Governor Cox and State Engineer Wilhelmsen because there is no right of action under Title VI against government officials in their individual capacities.  "[B]ecause the statute is based on [Congress's] spending power," and

because Title VI prohibits discrimination in a "program or activity," individual liability is incompatible with the implied right of action. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1169-70 (11th Cir. 2003); *accord Webb v. Swensen*, 663 F. App'x 609, 613 (10th Cir. 2016) (unpublished) (noting that, because employees of government agencies are not "recipients of federal funding," they cannot be liable for a Title VI violation).  Because it is "beyond question … that individuals are not liable under Title VI," *Shotz*, 344 F.3d at 1171, that claim should be dismissed against Governor Cox and State Engineer Wilhelmsen.

Second, Plaintiffs fail to state a claim against the State, or the Individual State Defendants in their official capacities, because the State itself cannot be considered a "program or activity" under Title VI, and therefore, plaintiff may not simply sue "the State" for an alleged Title VI violation.  *See, e.g. Assoc. of Mexican–American Educators v. State of Cal.*, 195 F.3d 465 (9th Cir. 1999), *rev'd in part on other grounds*, 231 F.3d 572 (9th Cir. 2000) (en banc); *Comfort ex rel. Neumyer v. Lynn Sch.*, 131 F. Supp. 2d 253, 255 (D. Mass. 2001). Title VI was not "intended to sweep in the whole state or local government when a single program or activity or department was found to be liable for discrimination." *Hodges v. Pub. Bldg. Comm'n of Chicago.*, 873 F. Supp. 128, 131 (N.D. Ill. 1995) (*quoting Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991)) (internal quotation marks omitted). Rather, the only proper defendant is the "department or agency" of a state government "which receives aid." *A.D.E. Food Servs. Corp. v. City of Phila.*, 1996 WL 590906, at *4 (E.D. Penn. Oct. 11, 1996) (quoting *Rannells v. Hargrove*, 731 F. Supp. 1214, 1223 n.11 (E.D. Penn. 1990)) (unpublished).

In this case, Plaintiffs have not named a "department or agency" of the State, to which any Title VI liability would attach.[9]  The State is not a proper defendant for a Title VI claim.

Finally, even if Plaintiffs could proceed against the State for its Title VI claim, Plaintiffs' claim must be dismissed because it has failed to plead that the State (or any State actor) intentionally discriminated against it on the basis of their race or other protected class. "Title VI itself directly reaches only instances of intentional discrimination." *Sandoval*, 532 U.S. at 281 (*quoting Alexander v. Choate*, 469 U.S. 287, 293 (1985)) (alterations in *Sandoval* omitted). Plaintiffs have not alleged any facts articulating any *intentional discrimination* on the part of the State or any Individual State Defendant (at least not within the four-year statute of limitations).[10] Plaintiffs have not linked the allegedly wrongful actions taken by the State vis-à-vis the water rights at issue to Plaintiffs' "race, color, or national origin." *Delbert v. Duncan*, 923 F. Supp. 2d 256, 261 (D.D.C. 2013).  Rather, Plaintiffs make unsupported, conclusory allegations that generic "Defendants" "have conspired to racially discriminate against the Ute Indian Tribe members by deliberately and systematically excluding the Tribe and its members from the benefits derived from federally-financed public water storage facilities and infrastructure …." (ECF 186, ¶ 1). Rather than including any *facts* showing present-day discrimination actionable in a state-run, federally funded program, Plaintiffs allege that animus from 110 years ago

---

[9] Further, the Complaint contains no allegation that CUWCD has used federal funds for any purpose other than those for which they were authorized and appropriated.

[10] Because Title VI lacks its own statute of limitations, courts borrow "the statute of limitations from 42 U.S.C. § 1981 and § 1983 which in turn rely on the respective personal injury statute of limitations in a jurisdiction." *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 237–38 (D.D.C. 2007). Utah has a four-year statute of limitations for personal injuries which is used as the statute of limitations for § 1983 cases. *Arnold v. Duchesne Cnty.*, 26 F.3d 982, 989 (10th Cir. 1994); *Sheets v. Salt Lake Cnty.*, 45 F.3d 1383, 1387 (10th Cir. 1995).

"continues to this day" (ECF 186, ¶ 316), that the diversion of water itself to state programs "evinces racial animus" and that Defendants' actions to divert water "*would result in* … the deprivation of water to the Ute Tribe". *Id.* at ¶ 317, ¶ 329. These are conclusory allegations, and allegations of alleged discriminatory effect, not intent. The conclusory allegations are insufficient to state a claim of purposeful discrimination *because of* race. *Iqbal*, 556 U.S. at 677. And allegations of disparate impact are not cognizable in a private right of action under Title VI. *Sandoval*, 532 U.S. at 286.

The Court should dismiss Plaintiffs' eleventh claim against the State for failure to state a claim on which relief can be granted.

## CONCLUSION

The Third Amended Complaint does not add any new information or case law that changes the fact that Claims One and Three are time-barred, as thoroughly explained by the D.C. District Court. Even if the claims were not time-barred, Claims One and Three should still be dismissed because the Tribe's Third Amended Complaint does not cure the fact that those claims fail to state a claim upon which relief may be granted and that the Court lacks jurisdiction over them.

Claim Eleven of the Third Amended Complaint continues to fail to state a claim against the State Defendants and should be dismissed for the same reasons that Claim 16 of the Second Amended Complaint was dismissed. Lastly, Claims Nine and Ten should be conditionally dismissed so that the State Defendants, as necessary parties to the GRBE, can be added. In the alternative, the Court should add the State Defendants to those claims.

Based on the reasoning above, and based on the reasoning provided by the Federal and CUWCD Defendants (related to Claim One, Claim Three, and Claim Eleven), the State respectfully asks that Claims One, Three, and Eleven be dismissed with prejudice.  The State would respectfully ask that Claims Nine and Ten be conditionally dismissed, or in the alternative, that the State Defendants be added to those claims.

DATED this 18th day of November 2022.

/s/ Stephen K. Kaiser
Stephen K. Kaiser
Kyle Kaiser
Anthony L. Rampton
Kathy A.F. Davis
Assistant Attorneys General

Kelsie Last
*Attorneys for Intervenor-Defendant*

**CERTIFICATE OF SERVICE**

I CERTIFY THAT ON NOVEMBER 18, 2022, THE UNDERSIGNED ELECTRONICALLY FILED THE FOREGOING **INTERVENOR-DEFENDANT STATE OF UTAH'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT** WITH THE CLERK OF THE COURT USING THE CM/ECF SYSTEM WHICH WILL SEND NOTIFICATION OF THIS FILING TO ALL COUNSEL OF RECORD:

/s/ Stephen K. Kaiser
Stephen K. Kaiser
Assistant Attorney General
Attorney for Intervenor-Defendant